**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| MONROE COUNTY BOARD OF COMMISSIONERS, MONROE COUNTY ENVIRONMENTAL COMMISSION, PAUL DAVID SIMCOX Dr., HOOSIER ENVIRONMENTAL COUNCIL, INDIANA FOREST ALLIANCE, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )   Case No. 4:20-cv-00106-TWP-DML |
| UNITED STATES FOREST SERVICE, MICHAEL CHAVEAS Forest Supervisor, MICHELLE PADUANI District Ranger, UNITED STATES FISH & WILDLIFE SERVICE, DAVID BERNHART Secretary, AURELIA SKIPWITH Director, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |
| | ) |
| RUFFED GROUSE SOCIETY, NATIONAL WILD TURKEY FEDERATION, CONGRESSIONAL SPORTSMEN'S FOUNDATION, INDIANA FORESTRY & WOODLAND OWNERS ASSOCIATION, INDIANA SPORTSMEN'S ROUNDTABLE, BACKCOUNTRY HUNTERS & ANGLERS, NATIONAL DEER ASSOCIATION, IZAAK WALTON LEAGUE OF AMERICA Porter County Chapter, INDIANA HARDWOOD LUMBERMEN'S ASSOCIATION, FEDERAL FOREST RESOURCE COALITION, AMERICAN FOREST RESOURCE COUNCIL, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Amicus. | ) ) |

## <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

This matter is before the Court on Cross-Motions for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Monroe County Board of Commissioners, Monroe County Environmental Commission, Dr. Paul David Simcox, Hoosier Environmental Council, and Indiana Forest Alliance (collectively, "Plaintiffs") moved for summary judgment on November 16, 2020. (Filing No. 33). Shortly thereafter, Defendants United States Forest Service ("USFS"), United States Fish & Wildlife Service ("FWS"), Michael Chaveas, Michelle Paduani, David Bernhart, and Aurelia Skipwith (collectively, "Defendants") filed a cross-motion for summary judgment. (Filing No. 35). Plaintiffs initiated this lawsuit against Defendants challenging the Houston South Vegetation Management and Restoration Project for violations of the National Environmental Protection Act and the Endangered Species Act. For the following reasons, the Motions are **granted in part and denied in part.**

## I.      BACKGROUND

These background facts are not intended to provide a comprehensive explanation of all the facts presented in this complex case or the administrative record; rather, it provides the background relevant to the issues before the Court.

The Hoosier National Forest (the "Hoosier") is comprised of approximately 200,000 acres of land located across nine counties in southern Indiana and is the only national forest located in the state. (Filing No. 34 at 13; Filing No. 36 at 9.) The Hoosier is home to numerous wildlife species including the Indiana bat, which is federally listed as an endangered species. (Filing No. 34 at 14.) As a national forest, the USFS oversees the management of the Hoosier. (Filing No. 36 at 10.) USFS governs each national forest using a management plan, and the plan for the Hoosier is titled the Hoosier National Forest Land and Resource Management Plan (the "Forest Plan"). *Id.*

The Forest Plan divides the Hoosier into ten management areas and outlines goals for the Hoosier, including "desired conditions" for each management area. (*Id.*; Filing No. 34 at 14.)

In 2014, USFS began the process of planning a vegetation management project in the Forest and considered three potential areas. (Filing No. 36 at 11.) USFS eventually selected the "Houston South" area, which is in the northwest corner of Jackson County and a small portion of the northeast corner of Lawrence County.  *Id.*  USFS selected the area because it was "overly dense, lacking young forest, and losing native oak and hickory trees as tree stands aged." *Id.* The proposed Houston South Vegetation Management and Restoration Project (the "Houston South Project") involves 401 acres of clearcutting, logging on approximately 4,000 acres, herbicide use on approximately 2,000 acres, and prescribed burning of 13,500 acres to "move the landscape toward desired conditions." (Filing No. 34 at 19.) The Houston South Project will also involve construction of 3.2 miles of new, permanent logging roads, 8.3 miles of "temporary" roads, and reconstruction of another 4.9 miles of roads. *Id.* The length of the project's activities is proposed to take anywhere from twelve to twenty years. *Id.*

In September and October 2018, USFS held three public meetings to discuss potential projects, including the Houston South Project. (Filing No. 36 at 12.) Following these meetings, USFS sent a scoping letter to interested parties on November 26, 2018. (Filing No. 34 at 20.) The scoping letter invited the public to submit "substantially different ideas" from the Houston South Project and required comments be submitted by December 26, 2018. *Id.* USFS also posted the proposal on its website and published notifications in several newspapers. (Filing No. 36 at 12.)

USFS received comments and questions from numerous respondents. *Id.* Some of these comments included concerns that the water quality of the Lake Monroe watershed would be threatened; concerns regarding recreational use of the Hoosier, including use of the Knobstone

Trail; and concerns regarding the effects to threatened or endangered species, including the Indiana bat. (Filing No. 34 at 20.)

In July 2019, USFS completed a draft Environmental Assessment ("EA") for the Houston South Project. (Filing No. 36 at 13.) An ENVIRONMENTAL ASSESSMENT is a concise public document prepared by a federal agency to aid an agency's compliance with National Environmental Policy Act ("NEPA") and support its determination of whether to prepare an environmental impact statement or a finding of no significant impact. 40 C.F.R. § 1508.1(h). The EA included several "issues" discussed under the "Environmental Effects" section that included concerns to water quality, hiking trails and recreationists, and possible harm to wildlife. (Filing No. 36 at 13.) The draft EA included a Finding of No Significant Impact  that concluded, among other things, that the Houston South Project would not significantly affect public health and safety and that the project would have no additional effects on the Indiana bat beyond those previously identified.  USFS accepted comments on the draft EA for thirty days. (Filing No. 34 at 21.) Plaintiffs, and others, raised similar issues to the project including concerns over recreational use of trails and impacts to Lake Monroe. *Id.* at 21-22.

In November 2019, USFS issued its final EA for the Houston South Project. (Filing No. 36 at 13.)  Around the same time, USFS also issued its Draft Decision Notice informing the public of its intention to issue a Finding of No Significant Impact. *Id.* USFS accepted objections for forty-five days. *Id.* Eleven individuals and organizations, including the Plaintiffs, submitted objections. (Filing No. 34 at 22.) These objections included concerns regarding the Houston South Project's impact on Lake Monroe, recreational trails, and asking USFS to consider "the increased plight of the Indiana bat" from White Noise Syndrome ("WNS"). *Id.* On February 14, 2020, USFS

responded to the objections and issued its final Record of Decision and Finding of No Significant Impact stating its intention to proceed with the Houston South Project. *Id.* at 23.

On May 13, 2020, Plaintiffs brought this lawsuit against Defendants alleging violations of the National Environmental Policy Act and the National Forest Management Act.[1] ([Filing No. 1](#).) Plaintiffs later amended their complaint to add an Endangered Species Act claim on August 24, 2020 ([Filing No. 26](#).), and then the parties filed their Cross-Motions for Summary Judgment ([Filing No. 33](#); [Filing No. 35](#)).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact and that moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).   In determining whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In a case involving cross-motions for summary judgment, each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004).

The Administrative Procedure Act ("APA") sets out the standards for reviewing federal agency action. The standard of review under the APA is a narrow one, and the plaintiff bears the burden of proof.  *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 378 (1989); *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995). The reviewing court is limited to answering two questions: (1) whether the agency made its decision after considering relevant factors, and (2)

---

[1] Though Plaintiffs asserted a claim alleging violation of the National Forest Management Act in their complaint, Plaintiffs have not raised the claim in their Motion for Summary Judgment.  Because Plaintiffs did not advance any arguments regarding this claim, the Court deems it abandoned.  *See Palmer v. Marion Cnty*, 327 F.3d 588, 597-98 (7th Cir. 2003).

whether the agency committed a clear error of judgment. *See Highway J. Citizens Group v. Mineta*, 349 F.3d 938, 952-53 (7th Cir. 2003). Under the APA, a court may set aside an agency action or conclusion when it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a); *see also Orchard Hill Building Co. v. United States Army Corps of Engineers*, 893 F.3d 1017, 1021 (7th Cir. 2018). An agency's determination is arbitrary and capricious if it relied on factors Congress did not intend it to consider, offers explanations for its actions that "run counter to the evidence before the agency," made a decision that "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," or entirely failed to consider relevant factors. *Zero Zone, Inc. v. U.S. Dept. of Energy*, 832 F.3d 654, 668 (7th Cir. 2016); *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995).

The Court sets aside agency findings of fact only if "unsupported by substantial evidence." 5 U.S.C. § 706. The Court reviews the whole record or those parts of it cited by the parties to determine if substantial evidence exists. *Id.* Substantial evidence "is no more than such relevant evidence as a reasonable mind might accept to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001).

### III.   <u>DISCUSSION</u>

Plaintiffs assert two claims against Defendants: (1) that USFS violated the NEPA by refusing to consider reasonable alternatives to the Houston South Project and failing to adequately assess the environmental impacts; and (2) USFS and FWS violated the Endangered Species Act's formal requirements for formal consultation about impacts to the endangered Indiana bat. The Court will address each claim in turn.

## A.      Violation of National Environmental Policy Act

When a federal agency seeks to pursue any major action that might have environmental consequences, it must comply with the procedures set forth in NEPA. *Habitat Educ. Center, Inc. v. U.S. Forest Service*, 673 F.3d 518, 525 (7th Cir. 2012).  NEPA is primarily a procedural statute; however, the statute "itself does not mandate particular results." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). With regards to judicial review of a NEPA claim, "arbitrary and capricious review prohibits a court from substituting its judgment for that of the agency as to the environmental consequences of its actions." *Highway J. Citizens Grp.*, 349 F.3d at 953.

NEPA requires federal agencies to prepare an Environmental Impact Statement for major federal actions that will "significantly effect" the quality of the human environment. 42 U.S.C. § 4332(c). An Environmental Impact Statement is "a detailed analysis and study conducted to determine if, or the extent to which, a particular agency action will impact the environment." *Highway J. Citizens Grp.*, 349 F.3d at 953 (citation and internal quotation marks omitted). In most cases, a federal agency will first prepare an EA, which is "a rough-cut, low-budget environmental impact statement designed to show whether a full-fledged environmental impact statement . . . is necessary." *Rhodes v. Johnson*, 153 F.3d 785, 788 (7th Cir. 1998) (quotation marks omitted). If the EA results in the agency finding that the proposed project with have no significant impact, the agency is not required to prepare an Environmental Impact Statement under NEPA. *See Protect Our Parks, Inc. v. Buttigieg*, 10 F.4th 758, 762 (7th Cir. 2021).

### 1.      Failing to Consider Reasonable Alternatives

Plaintiffs first argue that Defendants violated NEPA by failing to consider reasonable alternatives. "[T]he evaluation of 'alternatives' mandated by NEPA is to be an evaluation of

7

alternative means to accomplish the general goal of an action." *Simmons v. U.S. Army Corps of Engineers*, 120 F.3d 664, 669 (7th Cir. 1997) (quoting *Van Abbema v. Fornell*, 807 F.2d 633, 638 (7th Cir. 1986)). In preparing an EA, NEPA requires agencies to consider reasonable, feasible alternatives to the proposed action. 40 C.F.R. § 1501.5(c)(2); *see also Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 551 (1978).

Plaintiffs allege that Defendants failed to consider any "mid-range alternatives," which included disregarding "repeated public comments proposing specific mid-range alternatives." (Filing No. 34 at 26.) Specifically, Plaintiffs contend that public comments included asking Defendants to consider less road construction, less impact on existing trails including creating buffers around the Knobstone Trail, reducing activities of logging and burning to fewer acres, and restricting activities to winter months. *Id.* at 27. Plaintiffs also alleged that specific alternatives were provided but ignored, including "conducting the Project with less or no road-building; logging or burning fewer acres; including seasonal restriction on Project activities to protect wildlife; or including buffers along recreationally important trails." *Id.* As Plaintiffs put it, the alternatives would have allowed for implementation of the Project with reduced impacts. *Id.*

Plaintiffs also argue that Defendants "artificially narrow[ed]" the Houston South Project's purpose to limit what would be considered reasonable alternatives. *Id.* at 28. NEPA is violated if an agency "constricts the definition of the project's purpose and thereby excludes what truly are reasonable alternatives." *Simmons*, 120 F.3d at 670. Plaintiffs contend that when Defendants first accepted comments during the Project, the purpose of the Houston South Project was broadly defined as fulfilling the Forest Plan's "goal of maintaining and restoring sustainable ecosystems." (Filing No. 34 at 28.) Additionally, Defendants explained that the project would take place in Management Area 2.8 and the desired conditions would include "maintaining 4 to 12 percent of

the area in young forest habitat and diversity of age class and forest structure." *Id.* In response to this stated goal, multiple comments were provided asking for the project to consider and protect Lake Monroe and its tributaries, as well as reconsider the location of the project to protect recreation. *Id.* at 29. Plaintiffs argue that instead of analyzing these alternatives, Defendants added language to the draft EA that significantly narrowed the project's purpose by stating, "'[t]he Forest Leadership team decided it was appropriate for the next active forest management proposal to be in the Houston South area.'" *Id.* at 30. According to Plaintiffs, the EA did not assess whether the goals of Management Area 2.8 could have been accomplished outside of the Lake Monroe watershed nor explain why it was "appropriate" to act in the specific area chosen. *Id.* Plaintiffs contend that Defendants narrowing of the purpose gave it justification to refuse alternatives and circumvent NEPA's requirement for considering reasonable alternatives. *Id.* at 30-31.

Finally, Plaintiffs argue the Defendants' contention that there are no "unresolved conflicts" over the Houston South Project is arbitrary and capricious. *Id.* at 31. In the EA, Defendants stated there were no unresolved conflicts "because the concerns of those who oppose the project are addressed in the EA through consideration of the no action alternative." *Id.* at 32. Plaintiffs contend, however, that consideration of a no action alternative is not an appropriate way to resolve the issues raised regarding the Houston South Project. *Id.* Specifically, Plaintiffs assert that the no action alternative fails to truly consider the comments and suggestions that would have allowed for some portion of the Houston South Project to proceed while reducing the potential negative consequences it could have. *Id.* These suggestions for reducing the environmental impacts included buffers along important trails, seasonal restriction to protect endangered species, reduced road construction, and restricting harmful activities to outside the Lake Monroe watershed. *Id.* at

32-33. Plaintiffs contend the Defendants' disregard for these comments was arbitrary and capricious. *Id.* at 33.

In response, Defendants assert that they did not fail to consider reasonable alternatives. ([Filing No. 36 at 34](#).) According to Defendants, USFS relied upon its Forest Plan when deciding the goals outlined in the Houston South Project. *Id.* at 35. The Forest Plan allows USFS to decide the goals for each forest region and that it is "entitled to deference regarding its interpretation of the Forest Plan, unless that interpretation is plainly inconsistent . . . ." *Id.* (citing *Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1013 (9th Cir. 2012). They argue the portion of the Hoosier selected for the Houston South Project no longer meets the goals outlined in the Forest Plan and, therefore, USFS correctly chose this area to move it toward the desired conditions. *Id.* at 36.

Contrary to Plaintiffs' claim that the stated goal is "artificially narrow," Defendants assert that the Houston South Project's purpose is neither inconsistent with the Forest Plan nor unnecessary. *Id.* Defendants contend that Plaintiffs, instead of arguing the actual purpose of the Houston South Project, are asking the Court to change the project's goal to focus on the health of the Lake Monroe watershed. *Id.* at 36-37. Because this is not NEPA's purpose, Plaintiffs' proposed comments and criticisms to the Houston South Project amount to a "no-action" alternative that USFS rightfully considered and rejected. *Id.* at 37.

Likewise, Defendants argue that there were no "unresolved conflicts," and the alleged "reasonable alternatives" did not point Defendants to specific, reasonable alternatives that require a remand. *Id.* Defendants contend that mentioning alternatives is not "meaningful participation" and comments that are critical of the Houston South Project do not create the need for an Environmental Impact Statement where there is no evidence that the environmental analysis was flawed and where no reasonable alternative was offered. *Id.* at 37-38. Defendants, however, assert

that they did consider and address each of the Plaintiffs' proposals. *Id.* at 38. This included addressing restricting the project to outside the Lake Monroe watershed, which USFS stated would be impossible for it to meet its management goals. *Id.* Similarly, Defendants claim that they addressed the suggestion to reduce the amount of acres harvested, which would have reduced the project to just fifteen percent of the original proposal and would not have complied with the project's goals. *Id.* Defendants also argue that they addressed environmental concerns, why they could not limit harvesting to certain seasons, and proposed changes to prescribed burns. *Id.* at 39. Because Defendants considered and addressed each of these alternatives, they argue that their decision is entitled to deference. *Id.*

After reviewing the administrative record before it, the Court finds that Defendants did not artificially narrow the Houston South Project's purpose and did adequately consider reasonable alternatives in compliance with NEPA. From the beginning of the scoping process, USFS made it clear that the project would primarily occur in Management Area 2.8 with the goal of reaching "desired conditions" including "maintaining 4 to 12 percent of the area in young forest habitat and diversity of age class and forest structure." (Filing No. 34 at 28.) Even though Defendants did not alter the location of the project based on Plaintiffs' concerns over Lake Monroe, that does not mean Defendants sought to limit alternatives by inappropriately narrowing the project's purpose.

In fact, the record shows that, contrary to limiting the purpose of the Houston South Project, USFS considered the proposed reasonable alternatives and did not seek to ignore the alleged "unresolved conflicts" alleged by Plaintiffs. USFS considered the comments regarding reducing the number of acres where timber harvests could occur, having buffers along specific trails, and reducing road construction. (*See* Filing No. 34 at 27.) They simply rejected them. USFS also considered the suggestion that timber harvesting be limited to winter and early spring but rejected

this alternative because limiting USFS to these seasons would most certainly increase impacts to soil and water resources.  Though Plaintiffs may disagree with Defendants' refusal to adopt these alternatives, the Court's job is to ensure Defendants complied with the procedural requirement to consider alternatives, not pass judgment on whether suggested alternatives should have been chosen.

As Defendants did consider reasonable alternatives in compliance with NEPA, this portion of Plaintiffs' Motion for Summary Judgement is **denied,** and the corresponding portion of Defendants' Motion for Summary Judgment is **granted**.

### 2.      Failing to Consider Environmental Impacts

Plaintiffs also allege that Defendants violated NEPA by failing to consider the environmental impacts of the Houston South Project. In particular, Defendants ignored multiple comments asking them to "consider Lake Monroe's degraded condition and how the Houston South Project could exacerbate this problem."  (Filing No. 34 at 35.)

USFS owns roughly twenty percent of the Lake Monroe watershed. *Id.* This includes portions of the South Fork Salt Creek watershed, which contributes thirty percent of Lake Monroe's water and is located within the Houston South Project area.  *Id.* at 35-36.  Plaintiffs contend that Defendants failed to evaluate cumulative or indirect impacts to Lake Monroe when planning for the Houston South Project. *Id.* at 36. While the EA does briefly mention Lake Monroe, Plaintiffs assert that it fails to discuss the present and degraded condition of the lake, including its poor water quality or harmful algal blooms.  *Id.*  Instead, according to Plaintiffs, Defendants defined the "spatial boundary used to address cumulative impacts" to exclude Lake Monroe.  *Id.* As Defendants made clear that the Houston South Project would contribute sedimentation to the South

Fork Salt Creek watershed, Plaintiffs assert that Defendants violated NEPA by ignoring and failing to consider the cumulative impact the project could have on Lake Monroe. *Id.* at 37-38.

Plaintiffs also argue that Defendants violated NEPA by refusing to prepare an Environmental Impact Statement. *Id.* at 38. According to Plaintiffs, Defendants failed to "evaluate crucial impacts," which resulted in failing to make the case that the Houston South Project would have no "significant impact." *Id.* at 39. Plaintiffs contend that the location for the Houston South Project has unique characteristics, including the Hoosier, recreational trails like the Knobstone Trail, and portions of Lake Monroe's watershed. *Id.* at 39-40. The Houston South Project, according to Plaintiffs, will likely have a cumulatively significant impact on Lake Monroe, which will likely affect "public health and safety." *Id.* at 40-41. And, finally, the Houston South Project threatens the Indiana bat, threatens a violation of the Endangered Species Act, and the risks of the project are both highly uncertain and controversial. *Id.* at 41. Because each of these factors reveal a potential "significant impact" resulting from the Houston South Project, Plaintiffs argue Defendants should be required to prepare an Environmental Impact Statement. *Id.* at 43.

In response, Defendants contend the administrative record "shows that [USFS] considered erosion and increased sedimentation in the Lake Monroe watershed . . . and analyzed what best management practices would need to be taken to reduce impacts." (Filing No. 36 at 39.) Defendants also contend that the EA shows that USFS took a "hard look" at potential environmental impacts and disclosed those to the public. *Id.* at 39-40. According to Defendants, these actions were "all NEPA requires." *Id.* at 40.

Defendants point to the "Environmental Effects" portion of the EA, which they assert points to the potential issues of sedimentation resulting from the Houston South Project. *Id.* While Defendants admit that there was limited discussion regarding Lake Monroe, they also assert that

there was a "lengthy discussion about potential impacts to the South Fork Salt Creek watershed, which is the only watershed to Lake Monroe potentially impacted by the Project." *Id.* Defendants argue that Plaintiffs' disagreement with the decision to implement the Houston South Project within the Lake Monroe watershed is not the proper analysis under NEPA, which does not require a specific outcome. *Id.* Defendants contend that they adequately considered and addressed the concerns to Lake Monroe and there is no reason for the Court to require an Environmental Impact Statement. *Id.* at 41.

Additionally, Defendants argue that the decision to not issue an Environmental Impact Statement was not arbitrary or capricious. *Id.* at 24. According to Defendants, "[n]umerous experts from the Forest Service analyzed the regulatory factors and considered the environmental impacts of the project by examining issues during the scoping process and issuing environmental assessment reports." *Id.* Defendants also contend that Plaintiffs are mistaken regarding the Houston South Project area having "unique characteristics" as the area of the project is contained to only a small portion of the Hoosier. *Id.* at 25. Likewise, though Plaintiffs claim there are unresolved disputes, Defendants assert that objections do not automatically create disputes, and Defendants have considered and disclosed the potential impacts to trails, Lake Monroe, and the Indiana bat. *Id.* at 25-29. Defendants argue that these issues do not present any new, "significant" impacts that would require additional analysis or a different environmental outcome. *Id.* at 33.

After reviewing the administrative record, the Court agrees with Plaintiffs that USFS failed to evaluate the potential impact of the Houston South Project on Lake Monroe. While the Court uses a deferential standard when evaluating an agency's decision, the Court must consider "whether the decision was based on a consideration of relevant factors and whether there has been clear error of judgment." *Indiana Forest Alliance, Inc. v. U.S. Forest Service*, 325 F.3d 851, 858-59 (7th Cir.

2003) (citing *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989)). But an agency's failure to address certain critical factors that are essential to the decision to prepare an Environmental Impact Statement or not can render its finding of no significant impact unreasonable. *See Foundation for North Am. Wild Sheep v. United States Dep't of Agric.*, 981 F.2d 1172, 1178 (9th Cir. 1982).

The problem with Defendants' EA is that it failed to adequately consider or discuss the legitimate concerns the Houston South Project could have on Lake Monroe. Lake Monroe is the sole source of drinking water for 120,000 people in southern Indiana and already suffers from a degraded quality due to sedimentation and algal blooms. The South Fork Salt Creek watershed, which is located within the Houston South Project area, contributes 30% of Lake Monroe's water. (Filing No. 34 at 29.) While Defendants' EA does discuss the possibility of sedimentation to the South Fork Salt Creek and the use of best practices to reduce negative impacts, there is no mention of the present concerns regarding Lake Monroe's water or how the Houston South Project may exacerbate these problems. Given the number of comments and concerns that were raised during the scoping process regarding Lake Monroe, USFS should have at least provided a "convincing statement of reasons" that explained why the impact to Lake Monroe would not be significant. *See Blue Mountains Diversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir. 1998). But considering Defendants failed to do this while also acknowledging the sedimentation risk of the project and that "prolonged erosion can be a major negative effect," the Houston South Project should not move forward without first determining how the water quality of 120,000 people could be affected.

Having found that Defendants violated NEPA by failing to fully evaluate the environmental effects to Lake Monroe, this portion of Plaintiffs' Motion for Summary Judgment

is **granted,** and the corresponding portion of Defendants' Motion for Summary Judgment is **denied**.

**B.**   <u>**Violation of the Endangered Species Act**</u>

The Environmental Species Act requires the agency initiating a proposed action that affects "endangered" and "threatened" species to work with a consulting agency to protect the species and its critical habitat. 16 U.S.C. § 1536(a)(2). Specifically, the Environmental Species Act requires each federal agency to ensure that any action authorized, funded, or carried out by that agency "is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of a designated critical habitat. 16 U.S.C. § 1536(a)(2). The relevant regulations further require any agency proposing an action to pursue either informal or formal consultation with the FWS and/or other designated service if the proposed federal action "may affect" a threatened or endangered species. 50 C.F.R. § 402.14(a).

Plaintiffs first argue that the Defendants failed to use the best scientific data available regarding consultation about the endangered Indiana bat. (<u>Filing No. 34 at 43</u>.) The FWS issued its most recent review for the Indiana bat in September 2019 (the "2019 Review"), a month before FWS completed its consultation with USFS regarding the Indiana bat and the Houston South Project. *Id.* at 44. According to Plaintiffs, the 2019 Review presented a "dire forecast" for the Indiana bat, primarily due to the devastating WNS. *Id.* However, Plaintiffs claim that when formal consultation over the Houston South Project concluded, FWS made no statement regarding the threat of WNS to the Indiana bat. *Id.* at 45. Contrary to the harmful effects acknowledged in the 2019 Review, FWS's response to the Houston South Project did not acknowledge its use of or consideration of the information contained within the Review. *Id.* Plaintiffs contend that this

oversight ignoring the plight of the Indiana bat shows that Defendants violated the Environmental Species Act's requirement that the "best available science" be used. *Id.*

Plaintiffs also argue that Defendants violated the Environmental Species Act by failing to evaluate the current status and environmental baseline of the Indiana bat. *Id.* at 48. During the formal consultation process, the FWS is required to "[e]valuate the current status and environmental baseline of the listed species or critical habitat." 50 C.F.R. § 402.14(g). Plaintiffs contend that the FWS failed to consider the "current status of the Indiana bat because it "did not acknowledge that the species' population has been rapidly declining range-wide, or that Indiana has lost more individuals than any other state." (Filing No. 34 at 49.) Plaintiffs also assert that, despite FWS's own findings in the 2019 Review, it failed to mention the threat of WNS. *Id.* Likewise, Plaintiffs accuse FWS of failing to consider the "environmental baseline" by failing to mention to term and evaluate the activities and impacts to the Indiana bat. *Id.*

Finally, Plaintiffs argue that the USFS and FWS must reinitiate consultation under the Environmental Species Act. *Id.* at 50. Plaintiffs contend that it is necessary for several factors, including that Defendants failed to consider the best available scientific information about WNS, the current status of the Indiana bat, or "any adequate environmental baseline." *Id.* But Plaintiffs also assert that reinitiating is necessary because the amount or extent of the FWS's 2006 Biological Opinion has been exceeded. *Id.* According to the Plaintiffs, the 2006 Biological Opinion made it clear that the authorized take was only for 10 years, which would have ended in 2016. *Id.* at 51. Because Defendants relied on the 2006 Biological Opinion outside of this 10-year window, Plaintiffs argue that the Houston South Project will result in exceeding the amount or extent specified in the incidental take statement. *Id.*

Plaintiffs also contend that Defendants must reinitiate consultation because "new information reveals effects of the action that may affect listed species . . . in a manner or to an extent not previously considered." *Id.* at 51-52. Plaintiffs assert that WNS has "emerged as a new threat" to the Indiana bat since the publication of the 2006 Biological Opinion. *Id.* at 52. Similarly, Plaintiffs argue that reinitiation would provide the opportunity for Defendants to consider the information provided in the 2019 Review. *Id.* at 52-53.

In response, Defendants once again assert that the administrative record supports their position and proves that they conducted a thorough review of the impacts of the Houston South Project on the Indiana bat. (Filing No. 36 at 41.) Defendants assert that they knew of WNS when consulting on the Houston South Project and that biologists from both USFS and FWS were "informed by peer-reviewed literature about the Indiana bat and WNS during their analysis." *Id.* Though not specifically mentioned in the EA while discussing the Indiana bat, Defendants argue that this does not mean that the experts were unaware of WNS and its effects. *Id.* at 42. Defendants contend that the decision to pursue the Houston South Project "was a reasonable scientific choice given that there are no Indiana bat hibernacula within the Project boundaries or near the Project." *Id.*

Additionally, Defendants argue that Plaintiffs' claims regarding failure to rely on FWS's 2019 Review are without merit. *Id.* While Defendants assert that they were not required to rely on the 2019 Review, the FWS biologist who conducted the Houston South Project review was the same person who authored the 2019 Review, with each being authored only a few weeks apart. *Id.* at 42-43. Defendants contend that Plaintiffs are attempting to have the Court ignore that the Houston South Project was reviewed by an expert on the Indiana bat who was undoubtedly aware of his own research from the 2019 Review. *Id.* at 43.

Finally, Defendants assert that there is no reason to reinitiate formal consultation. *Id.* Defendants claim that during its original consultation, it was determined that the Houston South Project would not jeopardize the continued existence of the Indiana bat. *Id.* at 44.  As Defendants put it, Plaintiffs' claim that the 2006 Biological Opinion is "invalid" lacks both merit and scientific support.  *Id.*  Defendants argue that the "2006 Biological Opinion does not give blanket authorization for future projects; rather, any future site-specific projects carried out under the Plan (like this Project) must be reviewed to determine if they are consistent with the Biological Opinion and Incidental Take Statement once the site-specific activities are more clearly defined." *Id.* Defendants contend that the administrative record shows that the agencies have engaged in tiered consultation for each USFS project.  *Id.*  Additionally, the FWS has amended the Biological Opinion and Incidental Take Statement when necessary to account for changes that have occurred since 2006. *Id.* at 45.  During the formal consultation, according to Defendants, FWS "concluded that its analysis under the Incidental Take Statement (as amended) remains valid…". *Id.*  Thus, contrary to Plaintiffs' argument, the 2006 Biological Opinion has not expired and remains valid for the Houston South Project.  *Id.*

The Court agrees that Defendants complied with the Environmental Species Act. "When reviewing issues that do not revolve around application of a legal standard to settled facts, the court must give substantial deference to the expert agency." *Hoosier Env't Council v. U.S. Dept. of Transp.*, No. 1:06-cv-1442-DFH-TAB, 2007 WL 4302642, at *19 (S.D. Ind. Dec. 10, 2007).  The bulk of Plaintiffs' argument rest on Defendants' failure to rely on the 2019 Review and, thus, failing to consider the "best available science."  (Filing No. 34 at 43.)  But this argument is seriously undercut based on the 2019 Review and the Houston South Project review being completed only a few weeks apart *by the same FWS biologist*.  (Filing No. 36 at 43.)  There is no evidence in the

record that this biologist ignored his findings about the Indiana bat and WNS in the 2019 Review while also greenlighting the Houston South Project review.

There is also no evidence that Defendants ignored the existence of WNS or its effect on the Indiana bat, much less that Defendants relied on a biological opinion that was flawed. As FWS stated in a response to Plaintiffs, the Incidental Take Statement that accompanied the 2006 Biological Opinion was "formally amended" through consultation on four separate occasions between 2012 and 2016. Defendants thoroughly explained their valid reliance on the 2006 Biological opinion, as well as how consideration of WNS affected their consultation regarding the Houston South Project. *Id.* Given that Defendants complied with the requirements of the Environmental Species Act, this portion of Plaintiffs' Motion for Summary Judgment is **denied,** and the corresponding portion of Defendants' Motion for Summary Judgment is **granted**.

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the parties' Cross-Motions for Summary Judgment (Filing No. 33; Filing No. 35). Summary judgment is **granted in favor of Defendants** on Plaintiffs' claim for violation of the Endangered Species Act, and these claims are **dismissed**. Summary judgment is also **granted in favor of Defendants** on Plaintiffs' claim that Defendants did not consider reasonable alternatives in compliance with the National Environmental Policy Act, and this claim is **dismissed**.

Summary judgment is **granted in favor of Plaintiffs** on their claim that United States Forest Service violated the National Environmental Policy Act by failing to fully evaluate the environmental effects to Lake Monroe, this portion of the decision must be remanded to United States Forest Service for analysis consistent with federal law.

Final judgment shall be entered accordingly.

**SO ORDERED**.

Date:   3/30/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

William S. Eubanks II
EUBANKS & ASSOCIATES, LLC
bill@eubankslegal.com

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Sara Ghafouri
American Forest Resource Council
sghafouri@amforest.org

Clark Cunningham Johnson
KAPLAN JOHNSON ABATE & BIRD LLP
cjohnson@kaplanjohnsonlaw.com

William N. Lawton
EUBANKS & ASSOCIATES, LLC
nick@eubankslegal.com

Marjorie Kay Rice
MONROE COUNTY LEGAL DEPARTMENT
mrice@co.monroe.in.us

W. Russell Sipes
THE SIPES LAW FIRM
wrs@sipeslawfirm.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov